# In the United States Court of Federal Claims

No. 12-651C

(Filed: April 9, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| RAMONA INVESTMENT GROUP, | Motion to Dismiss; RCFC 12(b)(1); Voluntary Dismissal; RCFC 41(a)(1); Section 515 of the Housing Act of 1949; Emergency Low Income Housing Preservation Act of 1987 (ELIHPA); Anticipatory Repudiation; Effect of Dismissal Without Prejudice on Statute of Limitations. |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Jeff H. Eckland*, with whom was *Mark J. Blando*, Eckland & Blando LLP, Minneapolis, Minnesota, for Plaintiff.

*Jeffrey A. Regner*, with whom were *Stuart F. Delery*, Assistant Attorney General, *Bryant G. Snee*, Acting Director, and *Franklin E. White, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

This case is one of many proceedings arising from the Government's repudiation, through its enactment of the Emergency Low Income Housing Preservation Act of 1987 (ELIHPA), of certain loan agreements made under § 515 of the Housing Act of 1949. Under the § 515 agreements, property owners received low-interest mortgage loans from the Farmers Home Administration (FmHA) of the U.S. Department of Agriculture (USDA) in exchange for providing low-income rural housing for eligible tenants during the life of the loan. The agreements also provided that the property owners could prepay their mortgages, thereby freeing the housing from the covenants restricting their use. When Congress enacted the ELIHPA, it repudiated these agreements by announcing that

the Government would not fulfill its obligation to automatically accept tenders of prepayment.  Franconia Assocs. v. United States, 536 U.S. 129, 142 (2002).

Because the ELIHPA constitutes only a renunciation of future obligations, it does not ripen into an immediate breach in any particular case until the § 515 borrower either (1) attempts prepayment or (2) files suit.  Id. at 143.  Under either scenario, the moment of immediate breach starts the running of the six-year statute of limitations that applies to every claim over which this Court has jurisdiction, and claims not filed before the expiration of that six-year period are barred.  Id. at 133.

The question presented by the Government's Rule 12(b)(1) motion to dismiss is whether that six-year period begins with the filing of a § 515 borrower's complaint, even if that complaint is later voluntarily dismissed without prejudice.  As explained below, the Court finds that because a dismissal without prejudice renders the prior proceedings a legal nullity, it therefore cannot have the legal effect of starting the running of the statute of limitations.  Accordingly, the Government's motion to dismiss is denied.

## Background

On November 22, 1985, Plaintiff Ramona Investment Group ("Ramona") and the FmHA entered into a contract pursuant to § 515 of the Housing Act of 1949 for the development of a low- and moderate-income rural housing project known as "Countryside I Apartments."  Dkt. Nos. 25-2 to 25-4.  The contract terms, memorialized in a loan agreement, promissory note, and mortgage, provided that the FmHA would make a low-interest loan to Ramona, and in return Ramona would abide by certain restrictive-use covenants, such as renting only to eligible low-income tenants.  Id.  Those covenants would remain in place for the 50-year life of the mortgage, unless Ramona exercised its option of prepaying the loan, thereby exiting the § 515 program and freeing itself of the restrictive covenants.  Id.  Under the terms of the agreement, Ramona had an absolute right to exercise that option after 20 years, i.e., after November 22, 2005.  Id.

The Government subsequently repudiated the contract with the enactment of the ELIHPA, which imposed permanent restrictions on the prepayment of § 515 mortgages entered into before December 21, 1979, and the Housing and Community Development Act of 1992 (HCDA), which extended those restrictions through 1989.  See Franconia, 536 U.S. at 133, 137 n.3.  In particular, the ELIHPA directed the FmHA not to accept tenders of prepayment, but instead to negotiate with borrowers to continue the provision of low-income housing in exchange for certain incentives, such as offering an additional loan or reducing the interest rate on the current loan.  Id. at 136.

After the Government's anticipatory repudiation, Ramona took two discrete steps. First, on August 6, 2004, Ramona elected to treat the repudiation as an immediate breach by filing suit in this Court, alleging breach of contract and a Fifth Amendment taking without just compensation. Ramona Inv. Grp. I v. United States, No. 1:04-cv-01267 ("Ramona I"). Second, on October 4, 2006, Ramona submitted a formal application for prepayment to the USDA, requesting a prepayment date of July 1, 2007. Dkt. No. 25-5. However, in order to prevent § 515 borrowers from receiving "double compensation," the USDA's policy was not to consider applications for prepayment (and therefore not to offer incentives to avert such prepayment) while a borrower was seeking damages through litigation. Dkt. No. 25-6. Consequently, the USDA informed Ramona that it could not take both actions at the same time, but instead "must choose to either pursue loan prepayment OR seek damages for not being permitted to prepay." Id.

Ramona elected to pursue loan prepayment and, through a joint stipulation filed pursuant to Rule 41(a)(1) of the Rules of the U.S. Court of Federal Claims, voluntarily dismissed its claims without prejudice on February 20, 2007. Ramona I, Dkt. No. 15. On March 2, 2007, the USDA acknowledged the dismissal of Ramona I and stated that it would begin reviewing Ramona's prepayment application. Dkt. No. 25-7. However, the ensuing negotiations over incentives failed to produce tangible results. Ultimately, on September 17, 2012, the USDA notified Ramona that the Government would no longer offer any incentives in exchange for continued participation in the § 515 program. Dkt. No. 25-9.

Upon receiving that notification, Ramona commenced this action by filing its complaint on September 28, 2012. The complaint is based on the same factual allegations and stated the same causes of action as in the first action: breach of contract and a Fifth Amendment taking without just compensation.

On January 23, 2014, the Government filed a Rule 12(b)(1) motion to dismiss, arguing that the six-year clock for bringing claims in this Court began ticking with the filing of the complaint in Ramona I on August 6, 2004. Under this view, the clock stopped ticking six years later on August 6, 2010, and Ramona's claims in this case thus must be barred as untimely. Ramona counters that its 2004 complaint was voluntarily dismissed without prejudice, and therefore cannot be used to define the accrual date of its claims. Instead, Ramona asserts that its intended prepayment date of July 1, 2007 is the proper accrual date. Under this view, its 2012 complaint was filed well within the six-year limitations period.

The motion is fully briefed. The Court finds oral argument unnecessary, and the matter is ready for decision.

Analysis

Subject matter jurisdiction is a threshold requirement that must be satisfied before this Court can adjudicate the merits of a case. Semiconductor Energy Lab. Co. v. Nagata, 706 F.3d 1365, 1368 (Fed. Cir. 2013). One element of this jurisdictional requirement is that a complaint must be filed "within six years after [a] claim first accrues." John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 132 (2008) (quoting 28 U.S.C. § 2501). Naturally, the date that the six-year period expires depends on the date when it began; in other words, the date when the claim first accrued.

Where the cause of action is breach of contract, the accrual date is the moment at which the breach allegedly occurred. Franconia, 536 U.S. at 142–43. Where, as here, the Government had repudiated an FmHA loan agreement through its enactment of the ELIHPA, unless a promisee treats "ELIHPA as a present breach by filing suit prior to the date indicated for performance, breach would occur when a borrower attempted to prepay, for only at that time would the Government's responsive performance become due." Id. at 143.

It is undisputed that July 1, 2007 was the date on which the Government first denied Ramona's attempt to prepay. Consequently, the question is whether that date should stand as the date of breach, and therefore of claim accrual, or whether the date should be August 6, 2004, when Ramona first filed suit. Answering that question requires the resolution of one issue: the significance of Ramona's dismissal without prejudice of its first suit pursuant to Rule 41(a)(1).

Under Rule 41(a)(1), a plaintiff may voluntarily dismiss an action by, among other ways, filing a stipulation of dismissal signed by all parties. In general, the effect of such a voluntary dismissal "is to render the proceedings a nullity and leave the parties as if the action had never been brought." Bonneville Assocs. v. Barram, 165 F.3d 1360, 1364 (Fed. Cir. 1999) (alterations and internal quotation marks omitted). Application of that general rule to this case—that is, leaving the parties as if Ramona I had never been brought—would mean nullifying the effect of Ramona's filing of the 2004 complaint, including the effect it would have had in starting the six-year statute of limitations.

The Government attempts to limit the application of this rule, citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990), for the proposition that "[w]hether a voluntary dismissal without prejudice affects an issue depends upon whether that issue turns on an adjudication of the merits of the complaint." Dkt. No. 26 at 4. However, this is an imprecise characterization of the holding in Cooter & Gell. In reality, that case did nothing to limit the nullifying effect of a dismissal on an underlying dispute. Instead, it merely affirmed the well-established rule that courts retain jurisdiction to "consider

collateral issues after an action is no longer pending," and clarified that the definition of "collateral issues" includes the imposition of Rule 11 sanctions. Cooter & Gell, 496 U.S. at 395–96. The Supreme Court reasoned that once a litigant abuses the judicial system, the harm "has already occurred," and therefore a voluntary dismissal cannot "expunge the Rule 11 violation." Id. at 395, 398. That reasoning does not apply here, for unlike the commission of a Rule 11 violation, the filing of a complaint *can* be undone. In fact, this is precisely the purpose of voluntary dismissal as recognized by Rule 41.

Moreover, as the Government points out, ostensibly in support of its motion, the statute of limitations is not tolled during the pendency of a suit that is voluntarily dismissed without prejudice because such a suit "is treated as if it had never been filed." Stone Container Corp. v. United States, 229 F.3d 1345, 1353–54 (Fed. Cir. 2000) (internal quotation marks omitted). It strikes this Court as logically incoherent and patently unfair to find that a dismissed suit has a decisive legal effect on starting the statute of limitations period, but zero effect on its tolling. That conclusion is amplified by the circumstances of this case, where Ramona dismissed its first action because the USDA required such dismissal as a precondition for entering negotiations necessitated by the USDA's renunciation of its contractual duty—negotiations that the USDA later abandoned. Indeed, just as a "plaintiff should not be penalized for leaving to the defendant an opportunity to retract his wrongful repudiation" before his performance comes due, Franconia, 536 U.S. at 146, a plaintiff likewise should not be penalized for affording the defendant the same opportunity through a Rule 41(a)(1) dismissal.

Accordingly, the Court finds that the parties' joint stipulation of voluntary dismissal without prejudice in Ramona I served to nullify any legal effect of that suit on the claims currently before the Court. The Government's breach of contract could not have occurred until at least July 1, 2007, when Ramona attempted prepayment, and the limitations period could not have expired until six years after July 1, 2007. Consequently, Ramona's September 28, 2012 filing of the complaint in this case was timely.

## Conclusion

For the reasons set forth above, the Government's motion to dismiss is DENIED. The parties shall submit their joint preliminary status report no later than June 9, 2014.

IT IS SO ORDERED.

s/ Thomas C. Wheeler  
THOMAS C. WHEELER  
Judge
